In re CLOVER LEAF DAIRY, Debtor.

Lawrence S. KLEINFELD,
Trustee, Plaintiffs,

v.

CITRUS PARK BANK, Defendant.

Bankruptcy No. 85–3313.
Adv. No. 86–124.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 2, 1987.

---

3. 734 F.2d 628 (11th Cir.1984).

**500**

Lawrence Kleinfeld, St. Petersburg, Fla., for plaintiffs.

Robert Burguieres, St. Petersburg, Fla., for defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 7 adversary proceeding is a Complaint seeking to avoid a security interest in personal property pursuant to 11 U.S.C. § 544. The challenge to the security interest is alleged to be unperfected by Lawrence S. Kleinfeld, Trustee of the Chapter 7 estate (Trustee) who filed the above captioned complaint. Both the Trustee and the Defendant, Citrus Park Bank (Bank), have filed Cross–Motions for Summary Judgment alleging that there are no genuine issues of material fact and that the issues may be decided as a matter of law. The underlying facts, as they appear from the record, are indeed undisputed and are as follows:

On September 3, 1986, the Debtors Richard H. Fortner and Dorothy L. Fortner, d/b/a CLOVER LEAF DAIRY, executed a Security Agreement in favor of the United States Small Business Administration (SBA). The Security Agreement was de-signed to create a security interest to secure an indebtedness in the amount of $500,000.00 in the following items:

a. All equipment and machinery including power driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith....

c. All inventory, raw materials, work in progress and supplies now owned or hereafter acquired.

d. All accounts receivable now outstanding or hereafter arising.

e. All contract rights and general intangibles now in force or hereafter acquired.

On September 11, 1984, the Debtors filed Form UCC–3, (Statement of Change) which refers to the original UCC Financing Statement. The Statement of Change stated that the secured party was now Citrus Park Bank and described the collateral as follows:

"Assignment of all machinery and equipment (excluding automotive), furniture and fixtures, all dairy cows, all accounts receivable and contract rights, and *all milk base* now owned or hereafter acquired, now existing or hereafter created, wherever situated." (emphasis supplied)

While it was claimed by the Bank that the Statement of Change was filed with the Secretary of State of Florida, there is no evidence in this record of the filing, although it is without dispute that it was filed for record in the office of the Clerk of Hillsborough County, Florida on October 30, 1979.

The collateral on which the Bank claims a security interest is one document entitled "Revolving Fund Certificate" and another document entitled "Retained Equity Capital Certificate." The certificates which were issued by the Tampa Independent Dairy Farmer's Association, Inc. (TIDFA), were in the possession of the Debtors at the time of filing bankruptcy. The "Revolving Fund Certificate" provides in pertinent part, as follows:

3. This Certificate is transferable only on the books of the Association with approval of the Board of Directors.

On the border of the certificate there is a transfer record with blank spaces which indicates that the record is to be used when the certificate is transferred. Paragraph 4 of the certificate provides:

4. This and other certificates are subject in all respects to the by-laws of the Association and are junior and subordinate to all debts of the Association both secured and unsecured. Upon the winding up or liquidation of the Association in any manner, after full payment to all of its creditors, all revolving fund certificates shall then be retired in full or on a pro rata basis without priority."

The Retained Equity Capital Certificate provides in pertinent part:

4. This certificate shall be redeemed upon such terms and conditions as the Board of Directors of the Association may establish from time to time.

5. This and other Retained Equity Capital certificates shall be retired, in full or on a pro rata basis, without priority, upon the winding up or a liquidation of the Association in any manner after full payment to all of its creditors.

On the border of the certificate there is a transfer record which is the same as the transfer record in the Revolving Fund Certificate.

The record includes an Affidavit by B. Lawson Spare, the Assistant General Manager of the TIDFA. The Affidavit provides in part:

7. The policy of the TIDFA, as adopted by its Board of Directors, is to redeem to cash its revolving fund certificates in the tenth year following their issuance....

9. Redemption of retained capital certificates is at the sole discretion of the Board of Directors. In the past several years, the Board of Directors has elected to redeem to cash the retained capital certificates in the tenth year following their issuance.

10. Mere possession of either of these certificates, ... does not entitle the bearer to the proceeds upon redemption. The TIDFA, specifically the affiant herein, references equity books to determine who the lawful owner is.

11. These certificates, ... are not stock certificates in that the certificates do not entitle the holders to ownership interest in the TIDFA, but rather provide the holder with a notice of allocation consistent with the by-laws of the Association.

■ The threshold question relates to the true character of the certificates. Partially based on the description above, it is the Trustee's contention that the documents on which Citrus Park Bank claims a security interest are "instruments" as defined by Fla.Stat. § 679.105(1)(i)(1987). Under this Section of the Statute there are three categories of collateral which fall within the definition of "instrument". Section 679.105(1)(i) provides:

'Instrument' means (1) a negotiable instrument ..., or (2) a security ..., or (3) any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment;

The term "security" is defined by the U.C.C. in Section 678.102(1)(a) which provides:

A security is an instrument which:

1. Is issued in bearer or registered form; and

2. Is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

3. Is either one of a class or series or by its terms is divisible into a class or series of instruments; and

4. Evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.

These certificates meet all four requirements of the Statute. First, the certificates were issued in registered form. The lawful owner of the certificates is deter-

mined by TIDFA's equity books. Second, the certificates are commonly recognized in the area in which they were issued. Dairy cooperatives such as the TIDFA are common in the dairy industry. The cooperatives market the dairy farmers' products. The farmers are paid partly in cash, the remainder in certificates. Third, the certificates are part of a class or series of instruments. The revolving fund certificates constitute a non-interest bearing class of instruments which evidences a non-taxable distribution. The retained equity capital certificates constitute an interest bearing class of instruments which evidences TIDFA's deductions made from dairy farmer members at the rate of five cents per 100 pounds of milk marketed annually. Fourth, the certificates evidence the obligations of the issuer TIDFA. They give the holder notice of TIDFA's allocation to the farmer of a portion of TIDFA's net income. Thus, there is no question that the certificates under consideration are "securities" and in turn, "instruments" within the meaning of Section 679.105(1)(i) of the Florida Statutes.

■ Having concluded that the certificates are "instruments," the next issue is whether the original security agreement did in fact create a valid security interest in the certificates in favor of the SBA. It needs no elaborate discussion to point out that an enforceable security agreement must contain an adequate description of the collateral and the debtor's signature. Thus, even though the security interest created may be enforceable in general, it is clear that it still must be established the extent of the interest created, particularly whether a particular collateral, i.e., the Certificates, fall within the collateral described in the Security Agreement.

There is hardly any question that the Certificates do not fall within the collateral described in the security agreement as equipment or inventory. This leaves the question of whether the Certificates may be treated either as accounts receivable or general intangibles. The term "general intangibles" is defined in Florida Statutes § 679.106 as:

'General intangibles' means any personal property (including things in action) oth-

er than goods accounts chattel paper, documents, instruments and money.

Having concluded that the Certificates are "instruments," it is clear that the Certificates cannot possibly be classified as general intangibles.

The Bank contends that the Certificates are in fact notices of allocations of payments which are analogous to a statement of account. Therefore, the Certificates are really nothing more than evidence of a claim akin to accounts receivable. The term "accounts receivable" is defined by Florida Statutes § 679.106 as:

'Account' means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper whether or not it has been earned by performance.

Since the definition of an "account" requires that the right to payment not be evidenced by an instrument and since the Certificates have already been determined to be "instruments," the Court is satisfied that the Certificates cannot be classified as accounts receivable either.

Inasmuch as paragraphs a, c, d, and e of the security agreement do not describe collateral which would encompass the Certificates at issue, it is clear that the SBA never acquired an interest in the Certificates. From this it follows that since the SBA could have assigned only its interest actually acquired when it assigned its interest in the collateral to the Bank, the Bank never acquired any enforceable security interest in the Certificates either.

■ Unfortunately, on oral arguments both parties focused on the issue of perfection. The Bank argued that it had a perfected security interest in the certificates as a result of filing the Financing Statement (UCC 1) with the Florida Secretary of State. The basis for the Bank's argument was that the Certificates are "accounts receivable" and that a security interest on same was perfected by filing. In light of the fact that this Court has already determined that no security interest was ever created in the Certificates to begin with, the perfection issue is academic. However, even without admitting that there was a security interest created, it was never per-

fected because the Certificates are instruments and the Bank never acquired actual possession of same. This is so because a security interest in an instrument can be perfected only by the secured party's taking possession of the collateral. Fla.Stat. § 679.304(1987). At the time this Chapter 7 case was filed and thereafter, the certificates remained in the possession of the Debtor. Since Citrus Park Bank never took possession of the certificates, it could not have perfected a security interest in the collateral.

Based on the foregoing, this Court is satisfied that Citrus Park Bank had no security interest in the TIDFA certificates. It therefore appears appropriate to grant the Trustee's Motion for Summary Judgment and deny Citrus Park Bank's Motion for Summary Judgment.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Motion for Summary Judgment be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that Citrus Park Bank's Motion for Summary Judgment be, and the same is hereby, denied and Citrus Park Bank is deemed to have no interest in the certificates of the Debtor.